IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DAWN E.,

        **Plaintiff,**

  v.                                  Civil Action 3:23-cv-107
                                       Judge Thomas M. Rose
                                       Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Dawn E., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

I.      BACKGROUND

Plaintiff previously was found disabled beginning on April 15, 2011. A continuing disability review found that Plaintiff was no longer disabled as of August 9, 2016. Following a hearing on September 17, 2018, Administrative Law Judge Stuart Adkins (ALJ Adkins) issued an unfavorable decision on January 29, 2019, finding that Plaintiff's disability ended on August 9, 2016, due to medical improvements and that she has not become disabled again since that date. (R. at 75–94). The Appeals Council declined to review ALJ Adkins' determination, and Plaintiff did not seek judicial review. (R. at 95–100).

On August 26, 2020, Plaintiff filed her current application for DIB alleging disability beginning September 1, 2010, due to posttraumatic stress disorder (PTSD), major depressive

disorder (MDD), chronic obstructive pulmonary disease (COPD), severe anxiety, depression, stress, panic attacks. (R. at 222–28, 260). After her application was denied initially and on reconsideration, Administrative Law Judge ("ALJ") Laura Chess held a hearing on November 3, 2021. (R. at 48–74). ALJ Chess denied Plaintiff's application in a written decision on February 2, 2022. (R. at 17–43). The Appeals Council granted review and issued a new decision on February 7, 2023, adopting almost all of ALJ Chess's conclusions, incorporating her reasoning, and finding that Plaintiff is not disabled. (R. at 1–11). As such, the Appeals Council's decision is the final decision of the Commissioner. *See* 20 CFR § 404.981.

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record, and the parties briefed the issues. (Docs. 7, 10, 12, 13). The matter is ripe for review.

      **A.**      **Relevant Statements to the Agency and Hearing Testimony**

Because Plaintiff's Statement of Errors pertains to her mental health impairments only, the Undersigned limits her discussion of the record to the same. Furthermore, because the Appeals Council largely adopted ALJ Chess's reasoning and findings, the Undersigned addresses both decisions when applicable. (*See* R. at 4–5).

ALJ Chess summarized Plaintiff's hearing testimony as follows:

> [Plaintiff] testified she is 5'4" and weighs 302 pounds. She resides with her minor child who is 13 years old. [Plaintiff] no longer has a driver's license, which took four (4) attempts to pass, due to unpaid tickets. Since the last hearing, she testified she remains unable to work for the same physical and mental symptoms including chronic right leg pain, crying spells, anxiety, concentration problems, panic attacks, poor sleep, and low energy.

(R. at 24).

The Appeals Council addressed Plaintiff's statements to the agency as follows:

> \*\*\* [A]t the hearing, [Plaintiff]'s representative asked the vocational expert if there

2

> would be more than superficial interaction to apply, interview, and learn a job (Hearing Recording, 09:02:42ff). The vocational expert responded that yes, there would need to be some interaction that would be beyond superficial initially (Hearing Recording, 09:02:42ff). However, the medical evidence of record does not appear to support a limitation to superficial social interaction. [Plaintiff] stated in her function report that she got along with authority figures "good" and has never been fired from a job because of problems getting along with other people (Exhibit B7E, page 6). [Plaintiff] reported to the consultative examiner that she didn't really socialize at work but her relationship with supervisors was steady (Exhibit B10F, page 7). [Plaintiff] stated that she gets along with people and socializes with her daughter and a close friend (Exhibit B10F, page 4). [Plaintiff] stated that she can't be around people and big crowds (Exhibit B10F, page 7). However, the RFC already limits [Plaintiff] to no interaction with public. During [Plaintiff]'s consultative exam she was cooperative and displayed average social skills (Exhibit B10F, page 5). [Plaintiff] was also often noted to be in no acute distress and cooperative during exams (Exhibits B3F, page 9 and B13F, pages 2, 7). As such, limiting [Plaintiff] to superficial interaction with co-workers and supervisors does not appear supported.

(R. at 6).

### B. Relevant Medical Evidence

ALJ Chess also discussed Plaintiff's medical records and symptoms related to her mental impairments as follows:

> The prior final and binding ALJ decision of January 29, 2019 also found that [Plaintiff] has "severe" mental impairments of anxiety and depression (Exhibit B1A at 6). Since that time, [Plaintiff] continues to have mental health concerns and has received treatment of counseling and psychotropic medication on a routine outpatient basis (Exhibits B1F / B3F / B5F / B8F / B9F / B11F). Those treatment records show allegations of anxiety and depressive symptoms such as low mood and motivation, poor sleep, ruminative worry, and panic attacks. [Plaintiff] also has been diagnosed with a personality disorder and reports some PTSD-based symptoms arising from a remote automobile accident (Exhibit B17F at 2). Nevertheless, there is no evidence of any psychiatric hospitalizations, and while progress notes show some mood cycling largely due to situational stressors of financial constraints and physical health concerns (see, e.g., Exhibits B1F at 4, 8 / B9F at 4 / B11F at 2), they also show grossly normal mental status examination findings as discussed in detail below.
>
> In order to clarify the nature and severity of any mental impairment, [Plaintiff] was referred for a psychological examination by the Division of Disability Determination (DDD). The examination was performed by Jinhui Wang, Psy.D. on June 18, 2021 (Exhibit B10F). When asked what limited her ability to work,

3

> [Plaintiff] reported chronic pain and mental health concerns of PTSD, and anxiety and depressive symptoms including memory problems, withdrawal/isolation and low frustration tolerance. Both therapy and medication were of benefit, and [Plaintiff] had never been psychiatrically hospitalized.
>
> At the time of the examination, [Plaintiff] resided with her child who sometimes helped her with dressing and toileting needs. A typical day involved little activity beyond laying, sitting, and watching television But [Plaintiff] was able to do household tasks such as cleaning and cooking with breaks. [Plaintiff] also was able to grocery shop and manage her own medical appointments. [Plaintiff] spent time with a close friend and her daughter and had no problems getting along with others.
>
> [Plaintiff] presented as adequately dressed and groomed. There was no evidence of any thought content abnormalities. Speech was normal and intelligible. Thought processes were adequate. [Plaintiff] appeared sad and cried and seemed nervous during the evaluation. But she was cooperative and displayed average social skills. [Plaintiff] also was alert and fully oriented. She tracked the flow of conservation across the interview and did not display issues with understanding or remembering questions. Impairment in attention and concentration was not observed nor was distractibility. Concentration and persistence appeared satisfactory, and [Plaintiff] was able to remain on task and work at an adequate pace. Remote recall was adequate. Intellectual functioning was estimated in the average range.
>
> Based on her examination, Dr. Wang diagnosed unspecified depression and anxiety disorders. Despite these diagnoses, she concluded [Plaintiff] has sufficient orientation, reasoning and judgment and communication abilities to manage her own money. Dr. Wang did note some concerns in [Plaintiff]'s ability for sustained concentration and focus; maintaining effective social interactions with supervisors and coworkers, and the public, and coping with ordinary workplace stress. But her assessment does not really include precise restrictions, and thus, is too vague to be of any value in a function-by-function analysis of [Plaintiff]'s potential mental limitations. Therefore, Dr. Wang's opinion evidence can be considered only somewhat persuasive.

(R. at 25–26).

ALJ Chess evaluated the prior administrative medical findings of state agency psychologist Dr. Kristen Haskins as follows:

> Opinion evidence from the DDD psychologist on reconsideration, however, is partially persuasive (Exhibit B5A). Kristen Haskins, Psy.D., reviewed the record on July 6, 2021 and found that [Plaintiff] has a "severe" mental impairments of depressive, bipolar and related disorders and anxiety and obsessive-compulsive disorders. She concluded that [Plaintiff] experiences a moderate limitation in her ability to understand, remember, or apply and interact with others. She also has a

4

>moderate limitation in her ability to concentrate, persist, or maintain pace and adapt or manage oneself. According to Dr. Haskins, [Plaintiff] retains the capacity to perform 1-4 step moderately complex work tasks with no strict, fast-paced production demands in a routine setting without frequent changes in job duties where interaction with coworkers, supervisors, and the general public is on a superficial basis. Pursuant to AR 98-4(6), Dr. Haskins declined to adopt the findings in the prior ALJ decision due to new and material changes, namely [Plaintiff]'s diagnoses of PTSD and avoidant personality disorder (Exhibit B5A at 8). Yet, this declination is inconsistent. Dr. Haskins' suggested limitations actually closely align with the prior ALJ decision which also found that [Plaintiff] has moderate functional limitations (Exhibit B1A at 7) and has the mental capacity to perform simple, routine tasks not at a production rate pace in a routine work setting defined as 1-2 changes per week with occasional changes where interaction with coworkers and supervisors is on an occasional basis and no interaction with the general public.

(R. at 27).

## II.     THE APPEALS COUNCIL'S DECISION

The Appeals Council agreed with ALJ Chess's findings under steps one, two, three, four, and five of the sequential evaluation; namely, that Plaintiff has not engaged in substantial gainful activity, that Plaintiff has severe impairments which do not meet or equal in severity an impairment in the Listing of Impairments, that she is not capable of performing past relevant work, and that there are a significant number of jobs Plaintiff is capable of performing. However, the Appeals Council did not agree with ALJ Chess's finding regarding the time period at issue, finding that she should have determined Plaintiff was disabled only from January 30, 2019, through February 2, 2022. (R. at 4–5).

The Appeals Council also found that Plaintiff meets the insured status requirements through December 31, 2024, and has not engaged in substantial gainful activity since January 30, 2019, the day after the prior decision date. (R. at 8). The Appeals Council determined that Plaintiff has severe impairments of hernias, hypothyroidism, myalgia, bursitis, obesity, anxiety, depression, personality disorder, and posttraumatic stress disorder (PTSD). (*Id.*). Still, the Appeals Council

5

found that Plaintiff's impairments do not meet or medically equal a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the Appeals Council concluded:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for about 6 hours and sit for about 6 hours in an 8-hour workday; (3) alternating between sitting and standing every 30 minutes while at the workstation; (4) occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; (5) never climbing ladders, ropes, or scaffolds; (6) performing simple, routine, tasks; (7) understanding, remembering, and carrying out simple instructions; (8) making simple work-related decision; (9) no work at a production rate pace; (10) occasional interaction with supervisors and coworkers; (11) no interaction with the general public; and (12) occasional changes to a routine work setting, defined as 1-2 changes per week.

(R. at 8).

The Appeals Council found that transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled. (*Id.*). Considering her age, education, work experience, and RFC, the Appeals Council found that jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). The Appeals Council therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 30, 2019, through February 2, 2022. (R. at 9).

## III. STANDARD OF REVIEW

After the Appeals Council reviews the ALJ's decision, the Appeal Council's determination becomes the final decision of the Secretary subject to review by this Court. *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

## IV. DISCUSSION

Plaintiff argues that ALJ Chess and the Appeals Council inadequately considered state agency psychologist Dr. Haskins's mental health opinions and failed to give Plaintiff's case the "fresh review" required under *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). (Doc. 10 at 11). On both points, the Undersigned disagrees.

### A. Limitations on Social Interactions

When evaluating the opinions of the state agency psychologist, Dr. Haskins, the Appeals Council stated:

> The Administrative Law Judge found the opinion of Dr. Haskin's only partially favorable (Decision, page 8). Based on the above discussed evidence of record showing that superficial limitations are not warranted, the Appeals Council also finds that this opinion is only partially persuasive. The representative argues that Dr. Haskin's opinion contradicts the Appeals Council finding that the medical evidence of record does not support superficial interaction (Exhibit B5A, page 8). However, Dr. Haskins cites to no supporting evidence for this finding besides there being additional mental impairments (Exhibit B5A, page 8). As stated above the medical evidence of record shows that [Plaintiff] stated in her function report that she got along with authority figures "good" and has never been fired from a job because of problems getting along with other people (Exhibit B7E, page 6). [Plaintiff] reported to the consultative examiner that she didn't really socialize at work but her relationship with supervisors was steady (Exhibit B10F, page 7). [Plaintiff] stated that she gets along with people and socializes with her daughter and a close friend (Exhibit B10F, page 4). [Plaintiff] stated that she can't be around people and big crowds (Exhibit B10F, page 7). However, the RFC already limits [Plaintiff] to no interaction with public. During [Plaintiff]'s consultative exam, she was cooperative and displayed average social skills (Exhibit B10F, page 5). [Plaintiff] was also often noted to be in no acute distress and cooperative during exams (Exhibits B3F, page 9 and B13F, pages 2, 7). This evidence does not support superficial interaction. As such, the Appeals Council finds that occasional interaction with supervisors and coworkers and no interaction with the public is supported.

(R. at 7).

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in her or her case file. *Id.*; *see also* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). The governing regulations describe five different categories of evidence an ALJ considers: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5). An ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5). Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). At base, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021).

In support of her argument, Plaintiff points to cases where an ALJ's decision was reversed for replacing a state agency psychologist's limitation of "superficial interactions" with "occasional

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

20 C.F.R. § 404.1513(a)(2), (5).

8

interactions" without explanation. (Doc. 10 at 12). For example, in *Hummel v. Commissioner of Social Security,* the ALJ assigned "significant weight" to a state agency psychologist's opinion but did not include a limitation to superficial interactions simply because those are not "vocationally relevant terms." No. 2:18-CV-00028, 2020 WL 13572215, at *4 (S.D. Ohio Mar. 13, 2020). Similarly, in *Lindsey v. Commissioner of Social Security*, the ALJ assigned significant weight to the state agency psychologists' opinions but insufficiently explained why a limitation to superficial interactions was not included. No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018).

Yet an adjudicator is not obligated to adopt a state agency psychologist's opinion "verbatim" even if they give that opinion "great weight." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (quoting *Harris v. Comm'r of Soc. Sec.*, No. 1:13-CV-00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)). Rather, an ALJ must build an "accurate and logical bridge" between the evidence and her conclusion. *Peters v. Comm'r of Soc. Sec.*, No. 1:19-CV-827, 2021 WL 615234, *4 (S.D. Ohio Feb. 17, 2021) (citing *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011)). In the area of social abilities, the ultimate question before the Court is whether the ALJ and Appeals Council "meaningfully considered the type of interactions Plaintiff can have in a work environment." *Andrea B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-055, 2023 WL 128288, at *7 (S.D. Ohio Jan. 9, 2023). In this case, the Court finds that they did.

While Plaintiff argues that the ALJ, and therefore the Appeals Council, simply substituted "occasional interactions" for "superficial interactions" without explanation, that argument is without merit. (Doc. 10 at 14–16). The Appeals Council, like the ALJ, found Dr. Haskins's opinion only "partially persuasive" and rejected a limitation of "superficial interactions," noting

9

that Dr. Haskins failed to support her opinion with evidence from the record and failed to consider conflicting evidence of Plaintiff's social abilities. (R. at 6–7).

Indeed, Dr. Haskins did not reference statements from Plaintiff or supporting medical evidence when she opined on Plaintiff's social abilities. (R. at 113–14). Furthermore, Dr. Haskins's own evaluation shows that the evidence she reviewed does not necessarily support her conclusions. For example, when reviewing the examination by Jinhui Wang, Psy.D, Dr. Haskins noted that Plaintiff "was cooperative and displayed average social skills during the evaluation." (R. at 112, citing R. at 635). Dr. Haskins further found Dr. Wang's opinions "generally consistent with and supported by the record," but did not discuss why she limited Plaintiff to superficial interactions when Dr. Wang found her to have "average social skills." (R. at 112–14, citing R. at 632–37). Then, Dr. Haskins concluded that Plaintiff was "not significantly limited" in her ability to ask simple questions, request assistance, or maintain socially appropriate behavior. (R. at 113). She also found Plaintiff was "moderately limited" in her ability to accept instructions and respond appropriately to supervisors, her ability to interact appropriately with the general public, and her ability to get along with coworkers. (*Id.*). Yet, Dr. Haskins failed to explain these findings or connect them to evidence in the record.

In fact, as noted by the Appeals Council and the ALJ, the record as a whole is inconsistent with a limitation to superficial interactions. (R. at 7, 25–28). The Appeals Council stated that while Plaintiff reported she didn't "really socialize at work," Plaintiff also said her relationship with supervisors was steady, she got along with authority figures "good," and she had never been terminated from a job for her inability to get along with others. (R. at 7, citing R. at 285, 634, 637). The Appeals Council also highlighted Plaintiff's remarks that she generally gets along with people, socializes with her daughter, and regularly communicates with a close friend. (R. at 7,

10

citing R. at 637). And, as discussed by the ALJ, Plaintiff reported that both therapy and medication help her mental health conditions, and Plaintiff demonstrated the ability to receive support from friends; get along with others in a work-place setting; and present as calm, relaxed, cooperative, and normal at medical appointments. (R. at 26, citing R. at 632–37; R. at 28–29; *see e.g.*, R. at 285, 340, 350, 437, 464, 472, 478, 485–86, 492–93, 503–04, 511, 516, 519, 523, 526, 531, 534, 538, 541, 550–51, 562–63, 597, 640, 656, 661). Dr. Haskins does not address this conflicting evidence in her opinion, and, as such, the ALJ's and Appeal Council's assignment of only partial weight is supported by the record.

Moreover, the RFC crafted by ALJ Chess and affirmed by the Appeals Council is more restrictive than Dr. Haskins's opinion and includes qualitative limitations on Plaintiff's social interactions. For example, although Dr. Haskins recommended Plaintiff be limited to superficial interactions with "co-workers, supervisors, and the general public," ALJ Chess and the Appeals Council limited Plaintiff to "occasional interaction with supervisors and coworkers" and "*no interaction* with the general public." (R. at 113; R. at 8, 31) (emphasis added). This language provides an even greater limitation on Plaintiff's social interactions than that opined by Dr. Haskins. *See e.g.*, *May v. Comm'r of Soc. Sec.*, No. 3:19-CV-00047, 2020 WL 103579, at *5 (S.D. Ohio Jan. 9, 2020) (finding that the ALJ's RFC was more restrictive than the state agency psychologists' opinion when the ALJ included a limitation of no interaction with the general public, when the psychologists found Plaintiff only moderately limited in her ability to interact with the public). These limitations are also supported by the record, which shows that Plaintiff can get along with others in work environments but cannot handle "big crowds." (R. at 6, citing R. at 285 (stating Plaintiff gets along "good" with authority figures and has never been fired from

11

a job for not getting along with others); R. at 637 (stating that Plaintiff has "average social skills" and a "steady relationship with supervisors," but cannot "be around big crowds")).

ALJ Chess and the Appeals Council further found Plaintiff should be limited to "understanding, remembering, and carrying out simple instructions," "making only simple work-related decisions," and "performing simple, routine tasks." (R. at 8, 31). They also determined that Plaintiff was capable of only "occasional changes in a routine work setting, defined as 1-2 changes per week." (*Id.*). In her Statement of Errors, Plaintiff offers no additional limitations that ALJ Chess and the Appeals Council should have included in Plaintiff's RFC had they given Dr. Haskins's opinion more weight. (*See* Doc. 10). Moreover, in other cases, similar limitations have demonstrated that an adjudicator considered both the quality and quantity of interactions that a claimant could have and were deemed sufficient. *See Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00746, 2023 WL 4991918, at *9 (S.D. Ohio Aug. 4, 2023) ("[T]ime-limited occasional interactions in an unskilled work setting are reasonably understood to require only surface-level interactions. . . . This reality is particularly true when, as here, the mental RFC findings also limit the plaintiff to unskilled work that involves only simple instructions that can be learned in 1 month or less, with simple decision-making, and with no more than occasional changes in a routing work setting[.]"); *Chad T. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00052, 2022 WL 4355001, at *8 (S.D. Ohio Sept. 20, 2022) (holding that the ALJ included qualitative limitations on Plaintiff's social interactions, such as "retaining the ability to receive simple instructions [and] ask simple questions").

ALJ Chess and the Appeals Council adequately explained why they rejected Dr. Haskins's limitation to superficial interactions—they found her opinion unsupported by the evidence she

12

reviewed and inconsistent with the record as a whole. Substantial evidence supports their decision, and the Undersigned finds Plaintiff's allegation of error without merit.

### B. The ALJ's Compliance with *Earley*

Plaintiff also contends that the ALJ and Appeals Council improperly applied principles of *res judicata* to her case. Again, the Undersigned disagrees.

In *Drummond v. Commissioner of Social Security*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). In that case, the claimant's initial claim for SSI was denied when an ALJ found that she was capable of sedentary work. *Id.* at 838. When the claimant later re-filed her disability claim, a second ALJ found that she was capable of medium-level work—unlike the sedentary RFC finding of the first ALJ—and denied the re-filed claim. *Id.* at 839. After explaining that "[r]es judicata* applies in an administrative law context following a trial type hearing," the Sixth Circuit held that the second ALJ was bound by the sedentary RFC determination of the first ALJ because there was no new or additional evidence of an improvement in the claimant's condition. *Id.* at 841–42. The Sixth Circuit reasoned that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.* The Social Security Administration subsequently issued an Acquiescence Ruling explaining how the ruling in *Drummond* would be applied to claims in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the

13

unadjudicated period unless there is new and material evidence relating to such a finding….

AR 98-4(6), *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act – Titles II and XVI of the Social Security Act*, 1998 WL 283902, at *3 (June 1, 1998).

Then, in *Earley,* the Sixth Circuit clarified how *res judicata* applies in social security proceedings. 893 F.3d 929 (6th Cir. 2018); *see also Teasley v. Comm'r of Soc. Sec.*, No. 2:18-CV-1079, 2019 WL 2559514, at *5 (S.D. Ohio June 21, 2019) (stating that *Earley* clarified the Court's decision in *Drummond*). If a claimant files an application covering the same period as an earlier application, *res judicata* applies absent changed circumstances. *Id.* at 933. *Res judicata* does not apply if a claimant, like Plaintiff here, files a subsequent application seeking benefits for a different time period. *Id.* In those cases, the claimant is entitled for a "fresh review" of their application. *Id.* Yet the Court noted that "[f]resh review is not blind review." *Id.* at 934. The Court instructed that an ALJ may consider a prior ALJ's decision and that such consideration may lead to "consistent decision making." *Id.* If the current ALJ decides there is no new or material evidence in the claimant's record, they may treat the earlier decision as "legitimate, albeit nonbinding, consideration in reviewing a second application." *Id.* at 933.

Still, an ALJ's erroneous citation to *Drummond* without reference to *Earley* does not, on its own, warrant reversal. *Christina S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-298, 2023 WL 4557045, at *8 (S.D. Ohio July 17, 2023). While citing the wrong legal standard may raise a "yellow flag," the ultimate question before this Court is "whether the [adjudicator] gave a fresh review to the evidence" in a claimant's case. *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-58, 2023 WL 312795, at *5 (S.D. Ohio Jan. 19, 2023), *report and recommendation adopted*, No. 3:22-

14

CV-58, 2023 WL 2479792 (S.D. Ohio Mar. 10, 2023) (citing *Mitchell v. Comm'r of Soc. Sec.*, No. 20-CV-13414, 2022 WL 165869, at *2 n.3 (E.D. Mich. Jan. 28, 2022)). In other cases, discussing new medical records provided evidence that the ALJ freshly reviewed a claimant's case. *Brandon M. v. Comm'r of Soc Sec.*, No. 3:22-CV-167, 2023 WL 6348406, at *3 (S.D. Ohio Sept. 29, 2023). Adding severe impairments that were not included in a claimant's prior disability determination was also "a strong indicator that the current ALJ conducted a fresh look at the evidence." *Id.* (citing *Sadler v. Comm'r of Soc. Sec.*, No. 18-11689, 2019 WL 4892419, at *6 (E.D. Mich. Aug. 16, 2019)).

Here, these factors are present, and the Undersigned finds that the ALJ and Appeals Council gave Plaintiff's case the required "fresh look." *Earley*, 893 F.3d at 934.

As Plaintiff notes, ALJ Chess and the Appeals Council cited to *Drummond* and Acquiescence Ruling 98-4(6) without referencing *Earley*. (Doc. 10 at 11; *see e.g.*, R. at 6, 21–22, 33). For example, ALJ Chess incorrectly stated that "absent new and material evidence documenting a significant change in [Plaintiff's] condition, a residual functional capacity and findings pertaining to past relevant work made in a prior hearing decision… must be adopted by the present adjudicator." (R. at 21–22). But, elsewhere in her opinion, ALJ Chess opined that *Drummond* may not "strictly apply" in Plaintiff's case. (R. at 33). She also stated that "no new and material evidence" had been presented since Plaintiff's earlier social security application that showed "significant change (i.e., deterioration) in [Plaintiff's] mental status," but elsewhere found that "new and material evidence warrant[ed] some deviation" from previous findings. (R. at 27, 32). The Appeals Council did not discuss *res judicata* or *Drummond* and whether either applied to Plaintiff's case. Rather, the Appeals Council clarified the applicable time period for Plaintiff's application and otherwise upheld ALJ Chess's decision and reasoning. (R. at 4–5) ("The Appeals

15

Council agrees with the Administrative Law Judge's findings under steps 1, 2, 3, 4 and 5 of the sequential evaluation. . . . However, the Appeals Council does not agree with the Administrative Law Judge's finding regarding the period at issue.").

Although neither the Appeals Council nor ALJ Chess correctly cited to *Earley*, their reasoning shows that they reviewed new evidence in Plaintiff's case and gave her application the required "fresh review." *Earley*, 893 F.3d at 933.

As discussed above, ALJ Chess and the Appeals Council reviewed, in detail, new mental health evidence that did not exist at the time of Plaintiff's previous disability determination, as well as Plaintiff's own descriptions of her mental health. *See Brandon M.*, 2023 WL 6348406, at *3. ALJ Chess discussed Plaintiff's mental health treatment from 2019 to 2022, which included both therapy and medication management. (R. at 25–26, citing R. at 327–41, 380–85, 388–92, 414, 567–76, 611–14, 622, 640–47). She also noted that since 2019, Plaintiff has been diagnosed with both PTSD and a personality disorder but has never been hospitalized due to her mental health. (R. at 26, citing R. at 692). Furthermore, ALJ Chess looked at Plaintiff's subjective reports concerning her mental health, including memory problems, withdrawal and isolation from others, low frustration tolerance, struggles with PTSD flashbacks, depression, and anxiety. (R. at 26, citing R. at 632–37; R. at 24, citing R. at 60–64).

ALJ Chess then compared these new diagnoses and Plaintiff's statements about her mental health against other objective evidence in the record. For example, she discussed in detail an examination by Jinhi Wang, Psy.D, during which Plaintiff reported that her mental health conditions were helped by both therapy and medication. (R. at 26, citing R. at 632–37). This examination also highlighted Plaintiff's ability to complete daily activities, such as cooking and cleaning; her ability to attend medical appointments; her ability to grocery shop for herself and her

16

daughter; and her ability to communicate with a friend via phone. (R. at 634). Plaintiff also reported no problems getting along with others. (*Id.*). ALJ Chess further noted Dr. Wang's report that Plaintiff did not have any thought content abnormalities, was cooperative, displayed average social skills, was alert and able to track the conversation, appeared to understand and remember questions, had no concentration impairments, and was able to stay on track and work at an adequate pace. (R. at 26, citing R. at 635–36).

Then, ALJ Chess turned to records from Plaintiff's psychologist, Dr. Owen Ward, which stated Plaintiff has severe and marked social limitations but did not address conflicting evidence in the record concerning Plaintiff's social abilities. (R. at 28, citing R. at 686–90, 692–96; *see also* R. at 285, 340, 350, 437, 464, 472, 478, 485–86, 492–93, 503–04, 511, 516, 519, 523, 526, 531, 534, 538, 541, 550–51, 562–63, 597, 640, 656, 661 (demonstrating Plaintiff's normal mood at medical appointments, along with her ability to receive support from friends and get along with coworkers and supervisors)). Even after noting this conflicting evidence, ALJ Chess still added two new impairments of PTSD and personality disorder. (R. at 27). *See Parrish v. Comm'r of Soc. Sec.*, No. 3:17-CV-00411, 2019 WL 1465387, at *5 (S.D. Ohio Apr. 3, 2019), *report and recommendation adopted*, No. 3:17-CV-411, 2019 WL 4667730 (S.D. Ohio Sept. 25, 2019) (finding the ALJ gave a fresh look when they added new impairments beyond those identified by the previous ALJ). The addition of these impairments, along with the extensive discussion of Plaintiff's medical records, shows that ALJ Chess considered new evidence in the record and accordingly included the two recent diagnoses. (R. at 25–29, 33–34 (discussing medical evidence and Plaintiff's subjective reports regarding mental health)).

Finally, taking all this evidence into consideration, ALJ Chess crafted an RFC with more restrictions than the prior RFC created by ALJ Adkins in 2019. (R. at 33, 82). For example, ALJ

Chess found that Plaintiff could perform only simple, routine tasks and understand, remember, and carry out only simple instructions with no work at a production-rate pace, which is more restrictive and explanatory than ALJ Adkins's RFC. (*Compare* R. at 33 *with* R. at 82 (determining Plaintiff could "perform simple, routine tasks, but not at a production-rate pace")). ALJ Chess also modified the previous RFC that limited Plaintiff to "occasional changes" in a workplace to an RFC where Plaintiff can only make "simple work-related decisions," as well as tolerate only "occasional" work-place changes. (R. at 33, 82). These differences between Plaintiff's RFCs show that ALJ Chess considered new mental health evidence in the record and did not adopt the previous findings wholesale. *Christina S.*, 2023 WL 4557045, at *8 (affirming the ALJ's decision where, despite an incorrect citation to *Drummond,* the ALJ crafted a more restrictive RFC that the previous ALJ).

Therefore, the Undersigned finds that ALJ Chess and the Appeals Council freshly reviewed Plaintiff's case, and their decisions fulfilled the requirements of the regulations. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) ("We must affirm the Commissioner's decision if it is supported by substantial evidence and was made pursuant to proper legal standards.") (internal quotations omitted).

## V. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting

authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation de novo and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date:  November 9, 2023                                  /s/ Kimberly A. Jolson
                                                                                        KIMBERLY A. JOLSON
                                                                                       UNITED STATES MAGISTRATE JUDGE